Argued May 8, affirmed July 25, 1969

# STATE OF OREGON, *Respondent, v.*
# FREDRICK ELLIOTT FETTERLY,
## *Appellant.*

456 P2d 996

*George O. Tamblyn,* Portland, argued the cause for appellant. With him on the brief was Donald H. Crouch, Portland.

*Thomas H. Denney,* Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief was Roger Rook, District Attorney, Oregon City.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

Defendant appealed from a conviction of a violation of ORS 483.443(1), which prohibits the operation of a motorcycle without wearing protective headgear.

Defendant's sole ground of appeal is that such a statute is an improper exercise of the police power of the state in that the restraint of the statute upon his personal liberty bears no relation to a legitimate public purpose and, therefore, contravenes the Ninth, Tenth and § 1 of the Fourteenth Amendments to the United States Constitution and §§ 1, 20 and 33 of Article I of the Oregon Constitution. He argues that the sole effect of the statute is to protect the motorcyclist and that an individual has the right to engage in hazardous activity so long as he constitutes no hazard to others.

The extent of the authority of the state through its exercise of the police power has been described as follows:

"* * * The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare. * * *." *Liggett Co. v. Baldridge,* 278 U S 105, 111-112, 49 S Ct 57, 73 L ed 204 (1928).

A motorcycle is a vehicle capable of great speed and its operator is in an exposed position of extreme

vulnerability to objects that may be thrown up by other vehicles. It is a common experience to have a rock or other object hit the windshield of an automobile with extreme force. Such an object hitting the head of a cyclist could easily cause unconsciousness or at least momentarily render him unable to handle his vehicle. An uncontrolled vehicle has the potential to affect the safety of other motorists and members of the public adjacent the highway. The possible consequences of the momentary loss of control by a cyclist is described in *Bisenius v. Karns*, 42 Wis2d 42, 165 NW2d 377 at 380 (1969), as follows:

> "If the picture that flashes to mind is that of a solitary cyclist on a deserted country road losing control and hitting (sic), an affirmative answer seems plausible. But not all highways are deserted these days; in fact, few are. If the loss of cyclist control were to occur on a well-travelled highway, the separation between consequence and incidence is less sharp. Anything that might cause a driver to lose control may well tragically affect another driver. If the loss of cyclist control occurs on a crowded freeway with its fast-moving traffic, the verring (sic) of a cyclist from his path of travel may pile up a half-dozen vehicles."

It is our conclusion that the regulation in question bears a real and substantial relationship to public safety.

■ It has been suggested that if the purpose of the statute is really to deflect flying objects, a windshield requirement on motorcycle manufacturers would bear a more reasonable relationship to the objectives sought. See *American Motorcycle Association v. Davids*, 11 Mich App 351, 158 NW2d 72, 75 (1968). This suggestion overlooks that a determination of the over-all preferability of alternative solutions to such a prob-

lem is usually considered a legislative and not a judicial function.

The defendant urges in the words of *Bates v. Little Rock,* 361 US 516, 524, 80 S Ct 412, 4 L ed2d 480 (1960), quoted in the concurring opinion of Goldberg, J., in *Griswold v. Connecticut,* 381 US 479, 497, 85 S Ct 1678, 1689, 14 L ed2d 510 (1965), that "[w]here there is a significant encroachment upon personal liberty, the state may prevail only upon showing a subordinating interest which is compelling, * * *." This is a recognition that a balancing test occurs between the individual rights infringed and the benefits to the public welfare. In *Bisenius v. Karns, supra,* the court remarked that the right to be left alone does not include the right to do "one's thing" on an expressway. The court said:

"* * * There is no place where any such right to be let alone would be less assertable than on a modern highway with cars, trucks, busses and cycles whizzing by at sixty or seventy miles an hour. When one ventures onto such a highway, he must be expected and required to conform to public safety regulations and controls, including some that would neither have been necessary nor reasonable in the era of horse-drawn vehicles."

While it must be recognized that the chances of causing injury to others by failure to wear protective headgear are not as great as those resulting from most conduct which is the subject of motor vehicle regulation, the danger does exist and is a real one. On the other hand, the right to operate a motorcycle without protective headgear does not, in the scheme of things, loom very large when compared with any danger to the life and limb of others. We conclude that the legislature, in passing the questioned statute, has created no unconstitutional imbalance between the

personal liberty of the individual and interest of the state.

The majority of the courts which have passed upon the problem have upheld similar statutes. See: *State v. Burzycki,* (Cir Ct App Div 1969) petition for certification of appeal denied, 252 A2d 312; *Everhardt v. City of New Orleans,* 253 La 285, 217 So2d 400 (1969), reversing 208 So2d 423 (La App 1968); *Commonwealth v. Howie,* 238 NE2d 373 (Mass 1968), cert den 393 US 999, 89 S Ct 485, 21 L ed2d 464 (1968); *State v. Anderson,* 275 NC 168, 166 SE2d 49 (1969), affirming 3 NC App 124, 164 SE2d 48 (1968); *State v. Odegaard,* 165 NW2d 677 (ND 1969); *State v. Mele,* 103 NJ Super 353, 247 A2d 176 (Hudson Co Ct 1968); *People v. Carmichael,* 56 Misc 2d 388, 288 NYS2d 931 (Genesee Co Ct 1968), reversing 53 Misc2d 584, 279 NYS2d 272 (Sp Sess Ct 1967); *People v. Newhouse,* 55 Misc2d 1064, 287 NYS2d 713 (Ithaca City Ct 1968); *People v. Beilmeyer,* 54 Misc 2d 466, 282 NYS2d 797 (Buffalo City Ct 1967); *People v. Schmidt,* 54 Misc2d 702, 283 NYS2d 290 (Erie Co Ct 1967); *State ex rel Colvin v. Lombardi,* 241 A2d 625 (RI 1968); *Bisenius v. Karns,* 42 Wis2d 42, 165 NW2d 377 (1969). Contra: *American Motorcycle Association v. Davids,* 11 Mich App 351, 158 NW2d 72 (1968); *People v. Smallwood,* 52 Misc2d 1027, 277 NYS2d 429 (Sp Sess Ct 1967). For comparison purposes see *People v. Fries,* 42 Ill2d 446, 250 NE2d 149, 37 US Law Week 2683 (1969).

We hold that the statute was within the police power of the state and therefore constitutional. The judgment of the trial court is affirmed.