Floyd D. **ELLIOTT**, Plaintiff in Error,

v.

The **CITY OF OKLAHOMA CITY**,
Defendant in Error.

No. A–15491.

Court of Criminal Appeals of Oklahoma.

April 15, 1970.

Kenneth Nance, Oklahoma City, for plaintiff in error.

Roy H. Semtner, Municipal Counselor, James G. Hamill & Warren O. Romberger, Asst. Municipal Counselors, W. Roger Webb, for Robert R. Lester, Oklahoma City, amicus curiae, for defendant in error.

BUSSEY, Judge.

Floyd D. Elliott, hereinafter referred to as defendant, was charged by municipal citation for violating Ordinance No. 12,071 of the City of Oklahoma City, for operating a motorcycle without wearing a helmet. From a sentence finding the defendant guilty and fining him $10.00, the defendant appealed the Municipal Court decision to the District Court of Oklahoma County, where the fine was suspended and the defendant found guilty of violating the city ordinance.

The violation of a city ordinance with which this appeal is concerned occurred at 7:25 a.m. on April 15, 1969, at 1700 N.W. 30th Street in Oklahoma City, at which time the defendant was given a traffic citation.

In pertinent part, Oklahoma City Ordinance 12,071, which was violated, provides:

"G. Headgear. No person shall operate or ride upon any vehicle under this section unless such person is equipped with and wearing on the head a crash helmet of the type and design manufactured to be used by the operators of such vehicles. All crash helmets shall consist of lining, padding and chin strap, and said chin strap shall be fastened in such a manner as to hold said helmet securely on the head."

On appeal to the District Court of Oklahoma County on June 25, 1969, it was stipulated that the defendant was guilty of riding a motorcycle while not wearing a helmet; that he was issued a traffic citation, and that an ordinance requiring motorcyclists to wear headgear did exist; however, the defendant challenged the city ordinance as being unconstitutional in that it violated the due process and equal protection provisions of the United States Constitution and Article II Sections 2 and 7 of the Oklahoma Constitution.

At the conclusion of the hearing the judge found the defendant guilty of violating the city ordinance and sentenced him to pay the $10.00 fine levied by the city without ruling on the constitutionality of the ordinance. On July 7, 1969, the defendant was formally sentenced and the fine was suspended. It is from that judgment and sentence the defendant now appeals to this Court.

At the outset we observe that this appeal does not involve the question of whether the City of Oklahoma City is attempting to regulate an area preempted by the state, nor does it involve the wisdom or propriety of enacting such an ordinance, but rather it poses the single issue of whether a legislative body, acting under its police power, may constitutionally require the wearing of protective headgear by persons riding motorcycles or motor scooters upon the public thoroughfares.

The defendant relies upon American Motorcycle Association v. Davids, 11 Mich.App. 351, 158 N.W.2d 72 (decided April 30, 1968)[1]; Illinois v. Fries, 42 Ill.2d 446, 250 N.E.2d 149 (decided May 28, 1969)[2]; Everhardt v. City of New Orleans, La., La.App., 208 So.2d 423 (decided March 4, 1968)[3]; People v. Smallwood, 52 Misc.2d 1027, 277 N.Y.S.2d 429 (decided February 14, 1967)[4]; and People v. Carmichael, 53 Misc.2d 584, 279 N.Y.S.2d 272 (decided April 16, 1967)[5].

These cases in substance, held unconstitutional legislation requiring the operator and passengers of motorcycles to wear protective headgear for the reason that such

1. The Michigan legislature, after its original helmet statute was invalidated in American Motorcycle Association v. Davids, reenacted a law which required all motorcycles to be " * * * equipped with, and carry when * * * being operated, a number of crash helmets equal to the number of drivers and passengers carried * * * " Thus, it, in effect, rendered inoperative the *Davids* decision.

2. After considerable research, this writer is of the opinion that this is the *only* decision declaring this statute unconstitutional, which still stands.

3. Overruled in Everhardt v. City of New Orleans, La., 253 La. 285, 217 So.2d 400 (decided December 16, 1968).

4. Not overruled—but followed by People v. Bielmeyer, 54 Misc.2d 466, 282 N.Y.S.2d 797 (decided August 28, 1967, upholding the constitutionality of the statutes); People v. Schmidt, 54 Misc.2d 702, 283 N.Y.S.2d 290 (decided September 28, 1967, upholding the constitutionality of the statute); People v. Newhouse, 55 Misc.2d 1064, 287 N.Y.S.2d 713 (decided January 22, 1968, upholding the constitutionality of the statute). See also Footnote 5.

5. Overruled in People v. Carmichael, 56 Misc.2d 388, 288 N.Y.S.2d 931 (decided February 29, 1968).

legislation is enacted for the sole protection of the operator and passengers of said vehicles and serves no function of safeguarding the motoring public in general and is, therefore, violative of the Fourteenth Amendment.

Upholding the constitutionality of such legislation are the following decisions:

The first such decision is People v. Bielmeyer, 54 Misc.2d 466, 282 N.Y.S.2d 797, decided August 28, 1967, subsequent to People v. Smallwood, supra. In People v. Bielmeyer, supra, the City Court of Buffalo, New York held that the law requiring motorcyclists to wear protective helmets is a valid exercise of state's police power and is constitutional. In this decision, the Honorable Judge Mazur had this to say:

"The old joke about the happy motorcyclist—'the one with the bugs on his teeth'—is not too funny when one hears or reads about instances where cyclists have been hit with hard-shelled beetles or bees and have lost control of their bikes, causing damage and injuries to others.

Cyclists generally keep to the right of the road where stones and gravel are found which could be propelled by the delicately balanced wheels into the head of the cyclist or passenger, causing distraction and loss of control."

On September 28, 1967, in People v. Schmidt, 54 Misc.2d 702, 283 N.Y.S.2d 290, the County Court of Erie County, New York held that driving on a public highway was a privilege and not a right and that section of Vehicle and Traffic Law prohibiting operating or riding motorcycles unless operator or rider wears protective helmet of type approved by commissioners is neither vague nor uncertain and is constitutional.

This was then followed on January 22, 1968, by People v. Newhouse, 55 Misc.2d 1064, 287 N.Y.S.2d 713, where the City Court of Ithaca, New York held that the statute requiring the use of helmets by motorcyclists was a reasonable exercise of police power and was constitutional.

On February 29, 1968, in People v. Carmichael, 56 Misc.2d 388, 288 N.Y.S.2d 931, the Genessee County Court of New York held that the statute requiring operators of motorcycles to wear approved, protective helmets is a valid exercise of police power by the state, and the statute is not unreasonable, oppressive or discriminatory in means adopted to protect motorcycle operators. In the body of the opinion, that Court held:

"The legislature may enact laws prohibiting that which is harmful to the welfare of the people even though such interferes with the liberty of the individual, so long as it is reasonable. * * * While concededly the instant legislation may infringe on the rights of the individual, it is equally apparent that such is incidental to a valid exercise of the police power and is not unreasonable.

\*   \*   \*   \*   \*   \*

Furthermore, while these regulations apply only to motorcyclists, it is not discriminatory and equal protection is accomplished when all of a same class are treated in a like manner."

On May 8, 1968, in State ex rel. Colvin v. Lombardi, R.I., 241 A.2d 625, the Supreme Court of Rhode Island held that the statute authorizing the registrar of motor vehicles to prescribe type of helmet to be worn by motorcycle operators bears a reasonable relationship to highway safety generally and does not constitute improper exercise of police power in attempting to protect people from consequences of their own carelessness.

On June 5, 1968, in Commonwealth v. Howie, Mass., 238 N.E.2d 373, the Supreme Judicial Court of Massachusetts held that the statute requiring motorcyclists to wear protective headgear conforming with certain minimum standards bears a real and substantial relation to public health and general welfare and is a valid exercise of police power.

On October 17, 1968, in State v. Mele, 103 N.J.Super. 353, 247 A.2d 176, the Hudson County Court of New Jersey held

that the statute bears reasonable, real and substantial relation to public health, safety and welfare and is constitutional as valid exercise of police power of state.

On December 16, 1968, in Everhardt v. City of New Orleans, 253 La. 285, 217 So. 2d 400, the Supreme Court of Louisiana held that the ordinance was neither unconstitutionally vague and indefinite nor violative of the equal protection clause. A Writ of Certiorari had been granted and the ruling of the Court of Appeals in Everhardt v. City of New Orleans, 252 La. 269, 210 So.2d 508, was reversed.

On February 25, 1969, in State v. Odegaard, N.D., 165 N.W.2d 677, the Supreme Court of North Dakota held that the statute was a legitimate exercise of police power and did not violate any provisions of State and Federal Constitutions.

March 7, 1969, in Bisenius v. Karns, Wis., 165 N.W.2d 377, the Supreme Court of Wisconsin held, inter alia, that the sole purpose, effect and result of the safety statutes was not to protect the motorcyclists, riders or both against themselves; rather the statutes concerned or benefited other persons, particularly other users of the public highways, and accordingly, the enactment of the statutes was not outside the scope of the state's police power authority.

March 12, 1969, in State v. Anderson, 275 N.C. 168, 166 S.E.2d 49, the Supreme Court of North Carolina held that the statute bears a real and substantial relationship to public safety and was a valid exercise of the General Assembly's police power. This opinion affirmed the well-written opinion of the Court of Appeals of North Carolina in State v. Anderson, 3 N.C.App. 124, 164 S.E.2d 48, which will be cited further in this opinion.

April 25, 1969, in State v. Krammes, 105 N.J.Super. 345, 252 A.2d 223, the Superior Court of New Jersey, Appellate Division, held that the statute bears a real and substantial relationship to highway safety generally, and does not constitute an improper exercise of police power, and is not unconstitutional.

June 18, 1969, in Ex parte Smith, 441 S. W.2d 544, the Court of Criminal Appeals of Texas, cited with approval the holdings of State v. Anderson, 3 N.C.App.124, 164 S.E.2d 48, and held that the statute is intended to promote welfare and safety of general public as well as cyclist and bears reasonable relationship to highway safety generally.

July 25, 1969, in State v. Fetterly, Or., 456 P.2d 996, the Supreme Court of Oregon held that the statute bears a real and substantial relationship to public safety and is a valid exercise of police power.

We are in accord with State v. Anderson, 3 N.C.App. 124, 164 S.E.2d 48, wherein the Honorable Judge Parker of the Court of Appeals of North Carolina stated:

" 'The Legislature, unless it is limited by constitutional provisions imposed by the State and Federal Constitutions, has the inherent power to define and punish any act as a crime, because it is indisputedly a part of the police power of the State. The expediency of making any such enactment is matter of which the Legislature is the proper judge. However, the act of the Legislature declaring what shall constitute a crime must have some substantial relation to the ends sought to be accomplished.'

Furthermore there is a presumption that any Act passed by the Legislature is constitutional and all reasonable doubts will be resolved in favor of the lawful exercise of their powers by the representatives of the people. The right of a citizen to travel upon the public highways is a common right, but it is clearly within the State's police power to regulate and control the manner of exercise of that right in the interest of public safety and welfare. * * * In the case before us we are called upon to decide, therefore, only whether the statute here under attack bears a substantial relation to the promotion of the welfare and safety of

the general public as distinguished from the welfare solely of the individual riders of motorcycles who are most directly affected. We hold that it does.

Death on the highway can no longer be considered as a personal and individual tragedy alone. The mounting carnage has long since reached proportions of a public disaster. Legislation reasonably designed to reduce the toll may for that reason alone be sufficiently imbued with the public interests to meet the constitutional test required for a valid exercise of the State's police power. However, it is not necessary to invoke so broad a premise in order to find the statute here attacked to be constitutional."

In accordance with the authorities above set forth, we are of the opinion that Oklahoma City Ordinance No. 12,071 is constitutional and a valid exercise of police power. The judgment and sentence appealed from is accordingly affirmed.

BRETT, P. J., concurs.